UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-03688 RGK (CTx) | Date | February 24, 2010 |
|---|---|---|---|
| Title | *FRANK CURTIS LOPEZ v. CHER KOON TEO, et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:**   **(IN CHAMBERS)** Order re: Defendants' Motions to Dismiss (DE 33 and 41)

## I.   INTRODUCTION

On May 22, 2009, Frank Curtis Lopez ("Plaintiff") filed a complaint against Defendant Cher Koon Teo, Defendant Kong Deyang, Defendant Xin Juan, Defendant maxon motors ag ("maxon"), and Defendant ISDN Holdings.[1] This action arises out of alleged fraudulent activity and misrepresentations made by Defendants to gain the services and intellectual property of Plaintiff.

Before the Court are two Motions to Dismiss. Defendant Koon Teo, Defendant Deyang, Defendant Xin Juan, and Defendant ISDN Holdings filed a joint Motion to Dismiss. Defendant maxon filed its Motion to Dismiss separately. For the following reasons, the Court **GRANTS** Defendant maxon's Motion to Dismiss. The Court **GRANTS in part** the remaining Defendants' Motion to Dismiss with regards to the RICO allegations and **DENIES in part** their Motion with respect to the fraud claims.

## II.   FACTUAL BACKGROUND

At the outset, the Court notes that at this stage of the litigation, the Court must accept Plaintiff's factual assertions as true. Yet in doing so, the Court neither supports nor affirms any of the factual assertions. Any reference in this Order to the factual assertions in the Complain must be read in that light.

---

[1] By separate order, the Court joined Defendants Kong Deyang and Xin Juan to this Motion for Dismiss. maxon motors ag is purposely written in all lower-case per the explanation in maxon's Motion to Dismiss.

### A. The Parties

Plaintiff is a United States citizen and an expert in specialized electronic motors. He is knowledgeable in engineering, manufacturing techniques, intellectual property and marketing. Defendant ISDN Holdings ("ISDN") is a major engineering solutions provider with more than fifty offices across Greater China and the South Pacific. Defendants Koon Teo and Deyang (the "director Defendants") are Managing Director/President and Executive Director/Senior Vice President of ISDN. Defendant Xin Juan is an interpreter assigned by Defendant Deyang to interpret all the contracts and conversations between Plaintiff and ISDN's representatives. Defendant maxon ("maxon"), a global engineering firm, is a subsidiary of Defendant ISDN ISDN. The director Defendants also sit on the board of directors of maxon.

### B. The Gist of the Allegations

The gist of Plaintiff's claims is that several foreign individuals and entities collaborated to appropriate Plaintiff's intellectual property and services through fraud and deceit. Plaintiff states that Defendants reached out to him in United States, through e-mail and phone, and proposed a joint-venture. Eventually, after a number of meetings both in and outside the United States, Defendants induced Plaintiff to enter into a joint-venture with the intent to gain access to his intellectual property. Plaintiff sold his house and gave away much of his personal property to move to China and take part in the joint-venture, which was set up in China and Hong Kong. Once the join-venture was set-up, Defendants stole Plaintiff's intellectual property and transferred it to a second company, to which Plaintiff was not a party. In that second company, Defendants made (or intended to make, the Complaint is ambiguous) products using Plaintiff's intellectual property. Defendants intended to sell those products in the United States at some unspecified point in the future. When Plaintiff uncovered the scheme (or after Defendants had stolen the intellectual property), Defendants removed Plaintiff from the joint-venture.

### C. Theories of Liability

Plaintiff alleges that the individual Defendants (the director Defendants and Defendant Juna (the translator) collaborated in the scheme to defraud him and are therefore liable. Plaintiff seeks to hold ISDN liable because the director Defendants' fraudulent conduct was performed in their capacity as ISDN's directors with the intention to benefit ISDN. The theory of liability against maxon is less clear; it appears that Plaintiff merely named maxon as Defendant because the director Defendants are also on the board of directors of maxon.

### D. The Specific Allegations

On November 15, 2005, Defendant Cher Koon Teo, Managing Director of ISDN (a Singapore Corporation) and Plaintiff discussed via teleconference the possible formation of a joint-venture between ISDN and Plaintiff to manufacture specialized electronics. At the time of this initial phone conversation, Defendant Koon Teo resided in Singapore, and Plaintiff resided in San Marcos, California. On November 22, 2005, through an e-mail conversation, both Plaintiff and Defendant Koon Teo agreed to meet at Defendant Koon Teo's office in Singapore to further discuss the possible joint-venture. On December 5, 2005, Plaintiff and Defendant Koon Teo met in Singapore and agreed to form a business. They agreed that the joint-venture will consist of two parts: (1) a corporate office in either Hong Kong or Singapore; and (2) a manufacturing center in Suzhou, Peoples Republic of China. They also agreed that the joint-venture would be owned by a subsidiary of ISDN and Plaintiff.

In February 2006, Defendant Koon Teo and Plaintiff met with other prospective business partners in San Diego County, California, to finalize the business agreement. At the meeting, it was agreed or re-affirmed that (1) the corporate office will be in Hong Kong; (2) a separate company would be formed in Suzhou as the manufacturing and engineering center; (3) the business would start on April 1, 2006; (4) Plaintiff would relocate to Suzhou; (5) all corporate contracts would be sent to Plaintiff in the United States prior to his relocation; and (6) Plaintiff would be the CEO of the manufacturing company in Suzhou.

During March 2006, through several telephone conversations, Plaintiff and Defendant Koon Teo decided the corporate headquarters in Hong Kong, named USAS Motion Ltd.- Hong Kong ("USAS-HK"), would be registered with and operate from an existing ISDN facility in Hong Kong. Also, they decided the manufacturing and engineering center, named USAS Motion Ltd.- Suzhou ("USAS-Suzhou"), would also be housed in an existing ISDN facility in Suzhou. Defendant Koon Teo affirmed that the corporate-formation contracts would be ready for Plaintiff when he arrived in Suzhou.

Based on Defendant Koon Teo's assurances, Plaintiff (1) registered a domain name for the new corporation; (2) gave away nearly all of his personal belongings; and (3) prepared to relocate to the Peoples Republic of China.

On March 28, 2006, Plaintiff arrived in Suzhou and met with Defendant Deyang and Defendant Koon Teo. The three discussed USAS-Suzhou and USAS-HK, inspected USAS-Suzhou's facilities, and reviewed the Articles of Association for USAS-HK, which named Plaintiff as one of the directors.

Defendant Deyang informed Plaintiff that Plaintiff was not allowed to be involved in the registration of USAS- Suzhou because Plaintiff did not speak Chinese and his involvement in the registration process could result in higher fees and other charges for the company. Defendant Xin Juan, a translator appointed by Defendant Deyang, translated the registration documents written in Chinese for Plaintiff, which appointed Plaintiff as legal representative of USAS-Suzhou. Defendant Deyang informed Plaintiff that a subsidiary of ISDN would handle all the purchasing. Furthermore, Plaintiff, as CEO and legal representative of USAS-Suzhou, would not have access to the company banking, and all company payments required Defendant Koon Teo's personal signature. Furthermore, Defendant Deyang appointed a handler to conduct all company accounting, thereby further inhibiting Plaintiff's access to the company banking.

In September 2006, Defendant Koon Teo and Defendant Deyang informed Plaintiff that they hired two new engineers to develop another product line. One of the engineers received 5% ownership of the Suzhou company. The board of directors of USAS-Suzhou did not discuss this ownership arrangement. At a meeting in October 2006, Defendant Koon Teo and Defendant Deyang told Plaintiff that under Chinese law, the engineer could not own shares in a foreign company. Therefore, the company was forced to create a separate shell company and utilize a loophole to allow for the engineer's 5% ownership of USAS-Suzhou. Plaintiff later discovered that this was not a true statement and the engineer could have owned part of a foreign company.

In December 2006, Plaintiff received a two-year residency permit and a one-year work permit in China.

In January 2007, Defendant Teo Koon informed Plaintiff that he purchased a manufacturing software system and remotely installed the software on all of USAS-Suzhou's computers. This software allowed ISDN and one of its subsidiaries to have access to USAS-Suzhou's computers and remotely download all of the proprietary information from those computers.

      In April 2008, the two engineers hired by Defendant Deyang and Defendant Koon Teo unexpectedly resigned and all of the engineering files for the products developed by the engineers were missing from USAS-Suzhou's computers. One of the engineers told Plaintiff that Defendant Deyang told him to transfer the files to Servo Dynamics, an ISDN subsidiary under the control of Defendant Deyang, and delete the files from USAS-Suzhou's computers. This transfer was not discussed with Plaintiff. Defendant Koon Teo told Plaintiff that many of Servo Dynamics' personnel would be inspecting USAS-Suzhou to learn the manufacturing process. Plaintiff had signed several non-disclosure agreements with various companies and refused to allow Servo Dynamics access to customer intellectual property and proprietary information. One week later, on May 8, 2008, Defendant Deyang removed Plaintiff as General Manager and legal representative of USAS-Suzhou without the approval of the board of directors. Defendant Deyang changed the locks on Plaintiff's offices and denied Plaintiff access to the USAS-Suzhou facilities. Plaintiff witnessed personnel from ISDN 's subsidiary copying intellectual property and customer proprietary information owned by USAS-Suzhou.

      Plaintiff brought a suit in a Chinese court claiming he was wrongfully terminated. In these hearings, Plaintiff discovered that USAS-Suzhou was registered with Defendant Koon Teo as the CEO in contradiction to what Defendant Koon Teo and Plaintiff agreed on at their meeting in San Diego County. ISDN, Defendant Koon Teo, Defendant Deyang, and Defendant Xin Juan had full knowledge of the registration.

      In February 2009, Plaintiff discovered that Defendant Koon Teo fraudulently submitted a resignation of Plaintiff from the directors of the USAS-HK to the Hong Kong securities commission in June 2008 without Plaintiff's knowledge.

      On April 19, 2009, Plaintiff discovered that a new company, Accel Technologies, had been set up in Singapore to sell products that were developed by USAS-Suzhou during the time of Plaintiff's tenure into the United States market.

## III.    JUDICIAL STANDARD

      Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Once it has adequately stated a claim, a plaintiff may support the allegations in its complaint with any set of facts consistent with those allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). A plaintiff may not merely recite the elements of a cause of action in its complaint. *Id.* at 555. Instead, to survive a 12(b)(6) motion to dismiss, the complaint must contain factual allegations sufficient to "raise a right of relief above the speculative level." *Id.* Rule 12(b)(6) motions are viewed with disfavor. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003). When evaluating a 12(b)(6) motion, the Court must accept as true all factual allegations in the complaint and must draw all reasonable inferences from those allegations, construing the complaint in the light most favorable to the plaintiff. *Id.*; *Guerrero v. Gates*, 442 F.3d 697, 703 (9th Cir. 2006).

      Motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds. Fed. R. Civ P.12(b)(1); *see also Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008). Facial challenges to subject matter jurisdiction are based solely on the allegations in the complaint. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). When considering such challenges, the Court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true. *Id.* However, where a defendant raises a factual attack on subject matter jurisdiction, the district court may consider extrinsic evidence such as deposition testimony and affidavits. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).

## IV. DISCUSSION

### A. Defendants ISDN, Koon Teo, Kong Deyang, and Xin Juan

#### 1. *Subject Matter Jurisdiction*

Plaintiff is a United States Citizen and a resident of the State of California. Defendants are all foreign individuals and entities. This Court has jurisdiction under U.S. Const. art. III, § 2. *See also* 28 U.S.C. § 1332(a)(2).

#### 2. *Sufficiency of the RICO Allegations*

Plaintiff bases his RICO claim on 18 U.S.C. § 1962(b). Section 1962(b) makes "unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain . . . any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." In order to bring an action under this subsection, Plaintiff must allege that 1) Defendants took part in racketeering activity, 2) Defendants' racketeering activity led to taking control over a RICO enterprise, 3) the RICO enterprise is engaged in or affects interstate commerce, and 4) Plaintiff's injury flows from Defendants' taking over the RICO enterprise. *Id. See also Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003)(*overruled on other grounds in Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007(en banc)).

Here, Plaintiff has failed to sufficiently plead the third element. Plaintiff asserts, in essence, that Defendants induced him to enter into a join-venture with them in order to gain access to and steal his intellectual property. The join-venture was formed abroad and Plaintiff does not allege that it performed any activities that affected interstate commerce. Therefore, even assuming that Defendants' activities constitute racketeering and that the scheme to steal and market Plaintiff's intellectual property constitutes a RICO enterprise, Plaintiff's Complaint is deficient with respect to the third element and fails to state a claim for which relief may be granted.

Plaintiff attempts to circumvent that shortcoming by stating that Defendants set up a business, parallel to the joint-venture with Plaintiff, in which they used Plaintiff's stolen intellectual property to generate income. Plaintiff does not state that this second organization affected interstate commerce. Instead, he alleges that Defendants intended to sell their products, some of which is presumably based on Plaintiff's stolen intellectual property, in United States at some unspecified time in the future.[2] Yet, these allegations do not satisfy the third element. Defendants' alleged intention to sell goods in the United States in some unspecified time in the future is irrelevant. The statute requires that the RICO enterprise "is engaged in or affects" interstate commerce, not that it will. 18 U.S.C. § 1962(b). Plaintiff has not offered, and this Court is unaware of, any authority that interprets the statute differently.

---

[2] Plaintiff's Complaint asserts:

> On April 19, 2009[,] it was discovered that a new company, Accel Technologies[] had been set up in Singapore selling into the United States market product that were developed at USAS Motion Ltd–Suzhou during the time Mr. Frank Curtis Lopez was the legal representative.

(Pl.'s Compl. ¶ 25). Although the language is ambiguous, the Complaint includes two exhibits that clearly indicate that Accel Technologies merely intended to expand sales into the United States. (Pl.'s Compl. Ex. 11, 12.)

5

Plaintiff also alleges that Defendants used instrumentalities of interstate commerce, such as telephone, e-mail, and international travel, to reach out to him in United States in order to induce him to enter the join-venture. Again, this allegation is insufficient. The statute requires that the enterprise that Defendants acquire or maintain affect interstate commerce. *Id.* That the predicate acts might have involved the use of instrumentalities of interstate commerce does not mean that the RICO enterprise that Defendants acquired through the predicate acts affected interstate commerce.

Because Plaintiff has failed to allege sufficiently one of the requirements of RICO under 18 U.S.C. § 1962(b), the Court need not analyze the remaining elements. Plaintiff has not sought leave to amend. Nonetheless, given that Plaintiff is pro se, the Court has considered whether leave should be granted. Plaintiff has set forth the factual assertions in the Complaint in great detail. And the Complaint affirmatively establishes that although Defendants intended to sell products in United States in the future, they had yet to do so. (Pl.'s Compl. Ex. 11, 12); *see also supra* note 2. In this light, Plaintiff's failure to sufficiently allege the interstate commerce element does not signal a mere technical omission but a substantive limitation of the Complaint that cannot be cured based on Plaintiff's current knowledge of the facts. Therefore, the opportunity to amend would be futile. Plaintiff's RICO claim is **DISMISSED**.

3. *Sufficiency of the Fraud Allegations*

The Complaint alleges each fraud claim with sufficient particularity. To avoid dismissal for inadequacy under Rule 9(b), the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). Plaintiff may satisfy this standard by stating "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In a case with multiple defendants, Plaintiff must "identify the role of each defendant in the alleged fraudulent scheme." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007).

Here, Plaintiff separates his claims and identifies the parties, when the fraudulent activity occurred, and what the fraudulent conduct was. Defendant Koon Teo contacted Plaintiff as an officer of ISDN and induced him to take part in a join-venture. Yet, he did not establish a joint-venture as agreed and set up USAS-Suzhou as a subsidiary of ISDN instead. (Pl.'s Compl. ¶ 29.) Defendant Deyang, and Defendant Xin Juan misrepresented Chinese law in order to isolate Plaintiff and ensure Defendants' control over the newly formed company. (Pl.'s Compl. ¶¶ 16, 21.) Defendant Koon Teo registered himself and not Plaintiff as CEO in contradiction to their agreement. (Pl.'s Compl. ¶ 23.) Defendant Koon Teo fraudulently submitted a resignation letter on Plaintiff's behalf without Plaintiff's knowledge. (Pl.'s Compl. ¶ 24.)

Plaintiff's fraud claims are not, as Defendants argue, founded on "mere non-performance." *See Schlaadt v. Zimmerman*, 206 F.2d 782, 784 (9th Cir. 1953) ("[F]raud may not be predicated upon the mere nonperformance of a promise.") Plaintiff's complaint cites several counts of Defendants misrepresenting Chinese law, Defendants misrepresenting the status of USAS Motion, and Defendants conducting improper business practices – none of which are mere non-performance. (Pl.'s Compl. ¶¶ 28-39.) Moreover, Defendant Koon Teo's alleged failure to set up the joint venture was not mere non-performance. Not only did Defendant Koon Teo not set up a joint venture, he knowingly registered USAS Motion Ltd. as a subsidiary of ISDN. Plaintiff's allegations referring to Defendant Koon Teo's inconsistent contemporaneous assertions in San Diego and throughout the business relationship, which must be deemed true at this point, plead with sufficient particularity Defendants' alleged intent to defraud Plaintiff. (Pl.'s Compl. ¶¶ 28-29.)

Plaintiff has "set forth what is false or misleading about a statement, and why it is false" and explained "why the statement or omission complained of was false or misleading." 42 F.3d at 1548. Plaintiff has also alleged affirmative acts of actionable misrepresentation that go beyond mere non-performance of an agreement. Thus, Plaintiff satisfied Rule 9(b)'s requirement to plead fraud claims with particularity. Fed. R. Civ. P. 9(b).

### B. Defendant maxon

The doctrine of "respondeat superior may be applied under RICO" however, respondeat superior liability attaches only if an employer benefitted from its employee's RICO violation. *Brady v. Dairy Fresh Prods. Co.*, 974 F.2d 1149, 1153-54 (9th Cir. 1992) ("We hold that an employer that is benefited [*sic*] by its employee or agent's violations of section 1962 (c) may be held liable under the doctrine[ ] of respondeat superior."). In general, an employer will be vicariously liable "if its employee's acts were committed within the course and scope of her employment." *Oki Semiconductor Co. v. Wells Fargo Bank,* 298 F.3d 768, 775-76 (9th Cir. 2002). "Within the course and scope of employment means: (1) the conduct occurred substantially within the time and space limits authorized by the employment; (2) the employee was motivated, at least in part, by a purpose to serve the employer; and (3) the act was of a kind that the employee was hired to perform." *Id.* at 776.

Here, Plaintiff claims that both Defendant Kong Deyang and Defendant Cher Koon Teo are associated with maxon, and therefore maxon is liable for Defendant Koon Teo's and Defendant Deyang's actions. The Court disagrees that the mere association invokes vicarious liability.

Even under the liberal standard allotted to a complaint under 12(b)(6), Plaintiff does not show how maxon is liable under RICO and respondeat superior liability. The only link to maxon in the complaint is that both Defendant Deyang and Defendant Koon Teo are on maxon's board of directors. Yet, Plaintiff does not indicate how Defendant Deyang and Defendant Koon Teo committed the alleged fraudulent activity *in their capacity* as board members of maxon, or how maxon benefitted by Defendant Deyang's and Defendant Koon Teo's alleged violations. Although Defendant Deyang and Defendant Koon Teo were board-members of maxon while they conducted the alleged fraudulent activity, Plaintiff does not show how Defendant Deyang and Defendant Koon Teo were motivated to commit the alleged fraudulent activity to serve maxon. The complaint fails to show that Defendant Deyang and Defendant Koon Teo acted within the course and scope of their employment by maxon.

### V. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant maxon's Motion to Dismiss. The Court **GRANTS in part** the remaining Defendants' Motion to Dismiss with regards to the RICO allegations and **DENIES in part** their Motion with respect to the fraud claims.

**IT IS SO ORDERED.**

_____ : _____
Initials of Preparer   slw